Filed 9/4/20  In re K.L. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re K.L., a Person Coming Under the Juvenile Court Law. | C090995 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES, | (Super. Ct. No. JD263777) |
| Plaintiff and Respondent, | |
| v. | |
| E.L., | |
| Defendant and Appellant. | |

E.L., mother of the minor (mother), challenges the juvenile court's denial of her petition requesting that the court change its order terminating her reunification services and placing the minor under the guardianship of the paternal grandparents.  (Welf. & Inst.

1

Code, §§ 388, 395.)[1]  Mother also claims the court denied her right to due process and an opportunity to be heard when it denied the section 388 petition in her absence and without a hearing.  We will affirm the juvenile court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother and father have a history of engaging in domestic violence dating back to 2006, when the minor became a dependent of San Francisco County.  The dependency was terminated in April 2008 after both parents completed domestic violence-related services.

Following several domestic violence incidents in early 2015, the family came to the attention of the Sacramento County Department of Child, Family and Adult Services (Department) in October 2015 following yet another domestic violence incident, which occurred while the then 10-year-old minor was in the room sleeping.  During the incident, father choked mother twice to the point of near unconsciousness, dragged her by her hair, and hit and kicked her.  The minor was taken to her paternal grandparents' house where she wanted to remain because she felt safe.  The paternal grandparents were estranged from their son (father) and felt he was not capable of caring for the minor.  They signed a safety plan and agreed to keep the minor in their custody and care throughout the weekend and not allow either parent to enter their home.  They also provided the social worker with multiple videos showing mother violently hitting herself in order to create marks on her face to ensure father's arrest for domestic violence.

On December 30, 2015, the Department filed a dependency petition pursuant to section 300, subdivision (b) alleging parents failed to protect the minor due to the parents' history of engaging in domestic violence while the minor was present.  The

---

[1]  Unspecified statutory references are to the Welfare and Institutions Code.

2

petition further alleged both parents had an anger management problem that affected their ability to provide adequate care, protection, and supervision of the minor.

The juvenile court ordered the minor detained on January 5, 2016.

In its February 2016 report, the Department reported that, shortly after the minor was removed from her custody, mother declared she would not be participating in services or visits with the minor. In its April 2016 report, the Department stated the minor was reportedly distraught following an unapproved telephone call during which mother stated, "haha, your dad's going to jail for a long time." The report also detailed information regarding another serious domestic violence incident between the parents on March 13, 2016, which resulted in father's arrest.

On April 1, 2016, the court sustained the allegations in the petition and ordered the minor placed with the paternal grandparents. A report filed by the Department two weeks later outlined failed attempts to contact mother, the parents' lack of progress in visits, and mother's texts to the paternal grandmother calling the minor inappropriate, racist names.

The six-month review report, filed September 20, 2016, noted mother had been in custody since July 5, 2016, for threatening school or public officers or employees and she was not scheduled to be released until October 31, 2016. Mother requested the paternal grandmother bring the minor to the jail for a visit, but the minor stated she did not want to go.

The social worker's attempts to contact mother by letter, telephone, text, and e-mail were unsuccessful and there had been no face-to-face meeting with mother since January 2016. For example, in January 2016 the social worker was unable to contact mother to discuss services. In February, mother informed the social worker she did not mind having a Child Protective Services (CPS) case and not seeing the minor until the minor was 18 years old, and stated she would not be involved in services or visitation until the minor was returned to her. Mother also claimed the Department did not conduct

3

a proper investigation and stated she would not meet with the social worker. In March 2016, the social worker contacted mother in an attempt to engage her in services. Mother stated she had been living in the Bay Area since January, making trips to Sacramento difficult. She stated she was willing to engage in decreased services, but she did not want to participate in domestic violence services because she was not abusive, and she did not want to participate in parenting classes because most of the classes were for infants. Mother stated she was willing to participate in individual counseling and anger management classes if the Department was willing to pay for them.

Mother had not visited with the minor since January 2016 and her visitation referral closed on February 28, 2016, because she failed to contact the Department. Mother stated she wanted to get her services going before focusing on visitation. She noted the minor had been communicating with her by telephone and stated she would address visitation when she met with the social worker on April 1, 2016, but thereafter canceled the April 1, 2016 meeting.

In response to an April 20, 2016 e-mail from the social worker about court-ordered services and visitation, mother responded in part, "I honestly don't have time to deal with this right now," and stated she would forward the e-mail to her attorney and would "only deal thru her." The social worker contacted mother on April 21, 2016, to discuss court-ordered services and visitation, but mother became upset, began using profanity regarding the case, the minor, and the paternal grandparents, and then hung up the phone. Attempts to contact mother in May, June, and July of 2016 were unsuccessful.

While the parents had not participated in services, and visitation had been sporadic since January 2016, the Department nonetheless recommended six more months of reunification services and continued out-of-home placement for the minor. On October 11, 2016, the court issued orders consistent with the Department's recommendations.

4

According to the 12-month review report filed February 28, 2017, mother eventually participated in and completed seven of 30 parenting classes but refused to participate in any more individual counseling or parenting classes until the minor was returned to her custody. Mother finally participated in a visit with the minor in December 2016, but the visit was after mother threatened the social worker, who was forced to push the panic button for security assistance. When mother refused to leave, the minor became very sad. As a result of that incident, the minor stated she did not feel comfortable continuing visits with mother but stated she was willing to talk with mother on the telephone. The minor also informed the social worker that when in-person visits resumed she was not comfortable with the maternal grandmother supervising and instead wanted the Department to supervise the visits. She told the Department she felt safe and comfortable with her paternal grandparents.

The Department recommended termination of services to both parents and a plan of adoption for the minor by the paternal grandparents.

On April 5, 2017, the Department reported the minor continued to be uncomfortable with resuming visitation or communicating with mother. The social worker was provided with a number of text messages from mother to the paternal grandparents between December 2016 and February 2017 in which mother used inappropriate and racist names when referring to the minor.

On April 6, 2017, the court terminated mother's reunification services based on her lack of compliance with her case plan and set the matter for a section 366.26 hearing.

The August 1, 2017 selection and implementation report stated mother had not contacted the Department to request visitation with the minor. The minor last spoke with mother by telephone in late June of 2017, but the call was eventually terminated by the paternal grandmother because mother began talking about the court case. The minor last saw mother in December 2016 and stated she did not want to visit with mother. She wrote letters to mother with the support of her therapist, but mother did not respond to the

5

letters and reportedly tore them up because she did not understand why the minor was writing to her.

The Department reported concerns arising from the amount of, and threatening content of, texts and telephone calls from mother to the paternal grandparents. For example, on June 12, 2017, mother sent 1,374 text messages stating, "I'm going to fuck you all up. I know people." The paternal grandmother reported she had over 150 missed calls from mother in one day, and that mother would at times call and talk for an hour and a half about the history of CPS involvement in her life and how her current situation was unfair, yet never requested to speak with the minor or asked about the minor's well-being.

The minor was reportedly well-adjusted to the paternal grandparents' home, where she had been placed since January 12, 2016. She benefitted from her close relationship with the paternal grandparents and her cousins, and she made significant gains in all areas. The paternal grandparents continued to state their desire to have the minor remain in their care and their commitment to a permanent plan of legal guardianship. Given the minor's desire to remain with her paternal grandparents but her objection to termination of parental rights, the Department recommended a permanent plan of legal guardianship with the paternal grandparents.

On August 1, 2017, the court granted the paternal grandparents' request for a temporary restraining order against mother due to mother's threatening telephone calls and text messages. On August 22, 2017, the court granted a three-year restraining order against mother, which included the paternal grandparents and the minor as protected parties.

***Order for Legal Guardianship and Termination of Dependency***

On September 14, 2017, the court issued letters of guardianship to the paternal grandparents and terminated dependency jurisdiction.

6

*Mother's Section 388 Petitions*

On July 6, 2018, and July 13, 2018, mother filed substantially similar section 388 petitions requesting that the court change its September 14, 2017 order and grant her full custody of the minor. Mother argued changed circumstances in that she had obtained a restraining order against the father, she had been separated from father and was seeking a divorce, and she was more financially stable than the legal guardians (the paternal grandparents) and father. Mother further argued the requested change was in the minor's best interest because mother had no other children to support, she was more physically, emotionally, and financially stable than the paternal grandparents and father, and she had the support of her family members.

At the August 14, 2018 hearing on mother's petitions, the court granted the Department's request to continue the matter for further investigation. Thereafter, the Department filed a report on September 11, 2018, recommending the court deny mother's petitions based on its assessment that the risk of returning the minor to mother was high due to the lack of visitation for approximately two years, mother's statement that she was "not quite ready" to have the minor in her custody, and mother's failure to complete parenting education specific to the minor's age group. The report noted the minor continually confirmed she was not comfortable resuming visitation or communication with mother and expressed concern that if she returned to her mother, she would lose all contact with her father and would never be allowed to talk with him again. The Department further noted that mother participated in some services, but it was premature to return the minor to her custody due to various risk factors, including mother's extensive CPS history and her lack of participation in a domestic violence program. As such, the Department recommended denial of the section 388 petitions, as mother had yet to demonstrate a sufficient change of circumstances or that the requested change would be in the minor's best interest.

On September 11, 2018, the court denied mother's section 388 petition but ordered regular visitation consistent with the minor's well-being.

### Mother's July 30, 2019 Section 388 Petition

On July 30, 2019, mother filed another section 388 petition again requesting that the court grant her full legal and physical custody of the minor and reinstate reunification services. As she had for her first two petitions, mother used the standard Judicial Council form JV-180. She argued she completed a parenting class where she "learned a lot," and met with a therapist twice a month who "helps a lot." She further argued the requested change was in the minor's best interest because the minor would be "more successful with [mother] and drug and alcohol free" and the minor's life would be "much easier and quieter."

The court filed a standard Judicial Council form JV-183 court order, selecting the option stating that a hearing was ordered to consider the petition "because the best interest of the child may be promoted by [it]," and setting a hearing date of August 30, 2019, at 8:30 a.m.

On August 29, 2019, the Department filed a memorandum requesting that the court deny mother's section 388 petition and arguing mother's failure to regularly visit the minor resulted in an assessment that return of the minor to mother's care would be detrimental to the minor's well-being.

### August 30, 2019 Initial Hearing on Petition

Mother appeared late to the August 30, 2019 hearing on her petition. The court twice admonished her to appear between 8:30 and 8:45 a.m., appointed an attorney for her, and continued the matter to September 20, 2019. After some discussion about visitation, the parties agreed to instead continue the matter to September 13, 2019. When the court noted mother would be coming from some distance away, mother confirmed she would be present stating, "If I have to be here the night before, literally spend the night in

8

my car, absolutely, I will.  I'm committed to this."  The court continued the matter to September 13, 2019, and ordered mother to appear between 8:30 and 8:45 a.m.

The Department filed a report on September 13, 2019, requesting that the court deny mother's section 388 petition.  The minor reportedly did not wish to be returned to mother's care but agreed to visitation with mother at least one time per year.  The Department assessed the risk of returning the minor to mother's custody as high due to the lack of visits, and recommended the minor remain under the legal guardianship of the paternal grandparents due to the following:  the likelihood of further efforts at reunification were not in the minor's best interest; mother failed to participate in a number of services to help her gain the skills, knowledge, and capability of reunifying with the minor; mother failed to take the appropriate steps to initiate visitation with the minor; and the absence of a bond between mother and the minor.

### *September 13, 2019 Continued Hearing on Petition*

On September 13, 2019, the date of the continued hearing on mother's section 388 petition, mother failed to appear.  At the request of mother's counsel, the court granted a continuance to October 4, 2019.  The minute order noted mother "checked in, spoke with her counsel and left before the matter was recalled."

### *October 4, 2019 Final Hearing on Petition*

Mother again failed to appear at the continued hearing on October 4, 2019.  The paternal grandparents were present and requested the court deny mother's petition, as did minor's counsel.  Mother's counsel noted there was a *Marsden*[2] motion pending and argued that the court should grant mother's section 388 petition and increase visitation.  The court ruled as follows:  "As it relates to the *Marsden* motion, the mother was here last week and left before the case was called.  Today it's approximately 10:15.  The Court

---

[2]  *People v. Marsden* (1970) 2 Cal.3d 118.

9

started at 8:30.  All parents and people associated with the case are told and ordered to be here at 8:30.  It's 10:15, so that *Marsden* motion is vacated.  And the [section] 388 [petition] will be vacated, as well.  I'm sorry.  The [section] 388 [petition] is denied."

Mother filed a notice of appeal from the October 4, 2019 order.

## DISCUSSION

### I

### *Denial of Section 388 Petition*

Mother contends the juvenile court abused its discretion in denying her section 388 petition without a hearing.  She claims the petition showed both a change in circumstances and that the requested modification would be in the minor's best interests.  The claim lacks merit.

A petition to change or modify a juvenile court order under section 388 must factually allege that there are changed circumstances or new evidence to justify the requested order, and that the requested order would serve the minor's best interests.  (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 672.)  The petitioner has the burden of proof on both points by a preponderance of the evidence.  (Cal. Rules of Court, rule 5.570(h)(1)(D).)[3]  In assessing the petition, the court may consider the entire history of the case.  (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.)

To decide whether a parent has met his or her burden under section 388, the juvenile court must consider such factors as the seriousness of the problem that led to the dependency, and the reasons for the problem's continuation; the degree to which the problem may be and has been removed or ameliorated; and the strength of the relative bonds between the dependent child and the child's parents or caretakers.  However, this list is not exhaustive.  (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1229.)

---

[3]  Further rule references are to the California Rules of Court.

10

The child's best interests "are not to further delay permanency and stability in favor of rewarding" the parent for his or her "hard work and efforts to reunify." (*In re J.C.* (2014) 226 Cal.App.4th 503, 527.)

"A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.) The petition must be liberally construed in favor of its sufficiency. (Rule 5.570(a).) Nonetheless, if the juvenile court finds that even so construed the petition fails to make a prima facie case as to either or both tests under section 388, the court may deny the petition without an evidentiary hearing. (*In re Justice P., supra*, 123 Cal.App.4th at p. 189; *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1413; *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806; see rule 5.570(d).)

We review the denial of a section 388 petition for abuse of discretion. (*In re S.R.* (2009) 173 Cal.App.4th 864, 870; *In re J.T.* (2014) 228 Cal.App.4th 953, 965.)

Mother first makes a procedural argument in which she contends the fact that she sufficiently alleged both a change in circumstances and that the requested change would promote the minor's best interests was demonstrated by the juvenile court's order setting the matter for hearing by using the portion of the form designated for full evidentiary hearings rather than the portion of the form designated for a prima facie hearing. We disagree.

A contextual review of the record makes clear that the court intended that the hearing on mother's petition was to determine whether mother met her burden of making a prima facie case and, if so, whether an evidentiary hearing would thereafter be appropriate. Mother appeared late to the initial hearing on August 30, 2019. After admonishing mother about appearing on time, appointing an attorney for her, and continuing the hearing to September 20, 2019, the court explained to mother as follows:

11

"So what we will have September 20th is to decide whether I feel that there's enough evidence to go to trial. So it's a hearing at 8:30 where the Department, and children's counsel, and your attorney will make arguments, and then I'll make a decision whether a contested hearing should occur, or I'll say I'll make a decision without a contested hearing." Thereafter, it was agreed the matter would be continued to September 13, 2019. When mother asked whether the court would consider the minor's opinion, the court again explained, "We're not having a contested hearing and trial. This is just a hearing to determine whether -- I decide if that kind of hearing should be necessary."

It is clear from the record that the juvenile court's use of the particular portion of the Judicial Council JV-183 form to set the matter for a hearing was inadvertent and not because the court had concluded mother had established a prima facie case entitling her to a full evidentiary hearing on the petition.

However, even if we were to construe the court's use of the form as a ruling that mother had stated a prima facie case, "[a] juvenile court has the authority to change, modify, or set aside a previous order sua sponte if it decides that a previous order was 'erroneously, inadvertently or improvidently granted.' [Citation.] Thus, even if the juvenile court here had determined when it checked the box that mother's section 388 petition established a prima facie case, it retained the discretion to change that determination upon further consideration, and it did so. (§ 385.)" (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1160.)

As for mother's substantive claim that her petition provided sufficient evidence of changed circumstances and that the requested change was in the minor's best interests, we conclude the claim lacks merit. Mother's petition stated that, since her last section 388 petition (filed just weeks prior to the petition at issue), mother completed a parenting class, she "learned a lot," she "had to pay a lot of debts," and she met with a therapist twice a month who "helps a lot."

12

The general, conclusory averments in mother's petition lacked the specific allegations necessary to establish a change of circumstances or new evidence. (*In re Edward H.* (1996) 43 Cal.App.4th 584, 593.) Further, the record established the contrary. While mother eventually participated in a parenting class and some individual counseling at the eleventh hour, the Department's reports revealed that what little progress mother might have made was not sufficient to overcome the risk of returning the minor to her custody. For example, shortly after the minor was removed, mother reportedly refused to be involved in services or visitation unless and until the minor was returned to her custody. She refused to participate in domestic violence services because she felt she was not abusive. She told the social worker she did not "have time to deal with" services and visitation and became confrontational when the social worker attempted to discuss court-ordered services with her. Between July and October 2016, mother was incarcerated for threatening school or public officers or employees. She finally participated in a visit with the minor in December 2016, but the visit was terminated due to mother's threatening behavior causing the social worker to push the panic button for security assistance and causing the minor to become very sad. Between December 2016 and February 2017, mother was sending text messages to the paternal grandparents using inappropriate and racially charged names when referring to the minor. An August 2017 report noted that, in June 2017, mother sent 1,374 text messages to the paternal grandparents threatening to "fuck you all up." As a result, the court granted the paternal grandparents' request for a restraining order against mother. The Department's September 2018 report stated mother had not visited with the minor in approximately two years, admitted she was "not quite ready" to have the minor in her custody, had an extensive CPS history, and failed to participate in a domestic violence program, which was key to the issues requiring removal of the minor in the first place. The Department's next report, filed nearly one year later, expressed some of the same concerns, including that mother had not regularly visited with the minor and failed to follow through with the

13

visitation agency to schedule a first visit in April 2019. A subsequent report, filed one month prior to the final hearing on mother's section 388 petition, reiterated those concerns and noted that the likelihood of further efforts at reunification were not in the minor's best interests because, in part, mother failed to participate in services to help her gain the skills, knowledge, and capability of reunifying with the minor, and failed to take appropriate steps to initiate visitation with the minor. The record was replete with evidence that mother's circumstances had not changed.

Further, mother's petition alleged the requested change was in the minor's best interest because the minor would be "more successful with [mother] and drug and alcohol free" and the minor's life would be "much easier and quieter." Again, these general, conclusory averments lacked the specificity necessary to establish that the requested change was in the minor's best interests. (*In re Edward H., supra*, 43 Cal.App.4th at p. 593.) The record makes plain that mother's behaviors caused the minor to become increasingly uncomfortable to the point where the minor did not wish to continue in-person visits and eventually did not want to have any communication with mother. In contrast, the minor was well-adjusted to her placement with the paternal grandparents, with whom she formed a close bond and with whom she wished to remain under guardianship.

Under these circumstances, mother's petition did not establish a prima facie case requiring that the court set the matter for an evidentiary hearing. We conclude the juvenile court did not abuse its discretion in denying mother's section 388 petition without a hearing.

## II

### *Due Process*

Mother contends the juvenile court violated her right to due process and the opportunity to be heard on her section 388 petition. The claim lacks merit.

14

Due process requires notice and an opportunity to be heard. (*In re Melinda J.* (1991) 234 Cal.App.3d 1413, 1418.) "Whether a right to due process is violated, however, will vary according to the facts of each case." (*In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 833.) Despite the constitutional status of due process claims, they may be forfeited by failure to object. (*In re A.E.* (2008) 168 Cal.App.4th 1, 4-5; *People v. Saunders* (1993) 5 Cal.4th 580, 589-590.)

With respect to mother's claim that she was denied due process because the juvenile court denied her section 388 petition without a hearing, that contention has been forfeited. Mother was present and was appointed counsel at the initial hearing on August 30, 2019, where the juvenile court set the continued hearing for September 13, 2019, and explained that the hearing was "to decide whether I feel that there's enough evidence to go to trial." Mother's counsel was present at the September 13, 2019 hearing and requested and was granted a continuance to October 4, 2019. Mother's counsel was also present at the October 4, 2019 hearing and did not object on due process or any other grounds. Thus, the claim of denial of due process was forfeited because it was not raised in the juvenile court. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 222.)

In any event, even assuming mother's due process claim was not forfeited, she has not established prejudice. The California Constitution provides: "No judgment shall be set aside, or new trial granted, in any cause, . . . for any error as to any matter of pleading, . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.)

In the context of dependency proceedings, even due process violations have been held subject to the harmless beyond a reasonable doubt standard of prejudice. (See *In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1121-1123 [noncompliance with notification requirements of § 316.2]; *In re Angela C.* (2002) 99 Cal.App.4th 389, 395 [inadequate notice of the termination of parental rights hearing]; *Andrea L. v. Superior Court* (1998)

15

64 Cal.App.4th 1377, 1386-1388 [denial of contested permanency planning hearing]; *In re Dolly D.* (1995) 41 Cal.App.4th 440, 446 [denial of right to confront and cross-examine witnesses]; *In re Laura H.* (1992) 8 Cal.App.4th 1689, 1696 [absence of parent's attorney during examination of minor in termination of parental rights proceeding]; *In re Monique T.* (1992) 2 Cal.App.4th 1372, 1377 [parent's waiver of rights].)

Here, as explained in our previous discussion, mother failed to establish a prima facie case as to either of the two tests under section 388, thus resulting in the court's denial of the petition without an evidentiary hearing. (*In re Justice P., supra*, 123 Cal.App.4th at p. 189.)

We reject mother's claim that she was not provided an opportunity to be heard. Mother's counsel was present at the hearing. "The general rule is that personal appearance by a party at a civil proceeding is not essential; appearance by an attorney is sufficient and equally effective. [Citations.]" (*In re Dolly D., supra*, 41 Cal.App.4th at p. 445.) It was incumbent on mother's attorney to object and to make a record in the juvenile court as to why mother's attendance was necessary. Counsel did neither. Instead, as mother concedes, her attorney argued the issues raised in her petition.

We also reject mother's claim that the juvenile court failed to take into consideration any of the evidence or argument presented in mother's petition or by mother's counsel at the hearing and denied her petition on the sole basis that she was not present at the hearing. The juvenile court had already considered mother's petition as of the initial hearing on August 30, 2019. After considering the argument by mother's counsel, the court summarily denied mother's petition. As previously discussed, the petition did not show changed circumstances such that the minor's best interests would be promoted by mother's request for return of the minor to her care and custody and continued reunification services. Thus, mother did not make the showing necessary to obtain an evidentiary hearing. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310.)

16

We conclude the juvenile court did not abuse its discretion in denying mother's section 388 petition.

## DISPOSITION

The juvenile court's orders are affirmed.

_____/s/_____
RAYE, P. J.

We concur:

_____/s/_____
ROBIE, J.

_____/s/_____
MAURO, J.